# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CHLOE TSAKIRIS ALSTON,<br><br>    Plaintiff,<br><br>v.<br><br>CALCULATOR.COM; UNKNOWN REGISTRANT a/k/a RUTH YAKOBZON; STANDS4 LTD; and GODADDY.COM, LLC,<br><br>    Defendants. | Civil Action No. 1:20-cv-23013-BB |

**DEFENDANT STANDS4 LLC'S EXPEDITED MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER AND MEMORANDUM OF LAW IN SUPPORT**

Defendant Stands4 LLC a/k/a Stands4 LTD ("Stands4") makes this special appearance to respectfully move the Court to dissolve the *ex parte* temporary restraining order issued by this Court on July 27, 2020 [ (the "TRO").[1] Plaintiff has failed to meet the procedural and substantive requirements to forcefully wrest the calculator.com domain name from a party that purchased it for significant value and in good faith, and the Court should dissolve the TRO until the matter is fully briefed and Defendant Stands4 has an opportunity to appear and oppose the extreme relief Plaintiff is seeking.

Stands4 makes this Motion on an expedited basis due to Plaintiff's failure to make any effort to provide Stands4 with notice of her motion and the immediate and affirmative relief

---

[1] By seeking the to dissolve the TRO, Stands4 does not consent to the jurisdiction of this Court. *See First Franchise Capital Corp. v. Jack in the Box, Inc.*, No. 1:17-CV-397, 2017 WL 3269260, at *6 (S.D. Ohio Aug. 1, 2017) (finding no waiver of personal jurisdiction where raised in opposition to TRO); *ITL Int'l, Inc. v. Constenla, S.A.*, No. 1:10CV467 LG-RHW, 2010 WL 4537931, at *2 (S.D. Miss. Nov. 2, 2010), *aff'd,* 669 F.3d 493 (5th Cir. 2012) (finding no waiver where defendant preserved jurisdictional defense in response to TRO). As set forth below, this Court does not have personal jurisdiction over Stands4.

1

ordered by the Court. If the Order is not immediately dissolved, Stands4 will have no choice but to immediately transfer the calculator.com domain name to Plaintiff or risk having the domain name transferred without its consent or control—all without an opportunity to be heard and subject to a bond that, by Plaintiff's own admission, is worth a fraction of a value of the domain name. Such an abuse of the legal process would be contrary to the interests of justice and must be avoided.

I.   **FACTUAL BACKGROUND**

Stands4 is a leading provider of free online reference and educational resources such as Grammar.com, Lyrics.com & Scripts.com — serving millions of unique visitors with genuine and useful content through its collaborative network of award-winning reference websites and content partners. *See* Declaration of Yigal Ben Efraim ¶ 3 (July 28, 2020), attached hereto as Exhibit A ("Ben Efraim Decl."). Stands4 has been in the business of developing, operating and maintaining premium website brands in the education and reference sectors since 2001. *Id.* ¶ 4. Stands4 has no contact with—and no presence in—the state of Florida. *Id.* ¶ 5. No representative of Stands4 has travelled to the state of Florida, actively conducted business with anyone in Florida, or regularly communicated with anyone in Florida. *Id.* ¶ 6.

Stands4 purchased the domain name calculator.com on June 12, 2020 from Chloe Alston for $180,000.00. *Id.* ¶ 7. The purchase of calculator.com was conducted by Stands4 from Israel through the Dan.com domain name sales platform after the domain name was listed publicly for sale via Dan.com. *Id.* ¶ 8. Prior to purchasing the calculator.com domain name from Chloe Alston, Stands4 conducted significant due diligence to confirm that the domain name seller identified as Chloe Alston was indeed the lawful owner of the domain name including, without limitation, through a thorough review of the email and physical addresses disclosed on the

current and historical WHOIS records for the domain name and the content on the calculator.com website itself and comparison with the information provided by the seller. *Id.* ¶ 9.

Dan.com also advised Stands4 that it undertook significant due diligence to confirm that the domain name seller identified as Chloe Alston was indeed the lawful owner of the calculator.com domain name including, without limitation, review of Chloe Alston's U.S. issued passport, review of a utility bill provided by Chloe Alston, and review of current and historical WHOIS records for the domain name to confirm that all data corresponded to the data provided by the seller. *Id.* ¶ 11. Dan.com has advised Stands4 that it is "100% sure that Chloe owned the domain at the time of the transaction and that we were dealing with her. She explicitly authorized this transaction as well." *Id.* ¶ 12.

After purchasing the calculator.com domain name from Chloe Alston on June 12, 2020, Stands4 developed and posted a new website at www.calculator.com including the web's largest resource for calculations and conversions. *Id.* ¶ 13. Stands4 has spent approximately $50,000.00 developing and marketing Stands4's website at www.calculator.com (in addition to the $180,000.00 purchase price it paid to Chloe Alston for the domain name). *Id.* ¶ 14.

Plaintiff claims that the calculator.com domain name was previously stolen from her in 2018. *See* Compl. ¶ 28. Yet, rather than redouble her efforts to secure the domain name based on this experience, Plaintiff alleges that she left the false contact information in place in the registration record for the domain name, which allowed the same alleged domain name thief to purportedly lie in wait for two years before striking again in 2020. *See id.* ¶ 33.

Based on Stands4's extensive pre-purchase diligence, it believes Plaintiff's lawsuit reflects a pre-planned and well-organized fraud attempt by Chloe Alston. *See* Ben Efraim Decl. ¶ 10.

## II.  PROCEDURAL HISTORY

On July 21, 2020, Plaintiff filed her verified complaint against www.calculator.com, Unknown Registrant A/K/A/ Ruth Yaklobzon, Stands4 LTD, and GoDaddy.com, LLC alleging that Defendant Unknown Registrant fraudulently took control of the calculator.com domain name from Plaintiff and subsequently transferred the domain name to Stands4. ECF No. 1. The Complaint alleges that Defendant Unknown Registrant A/K/A Ruth Yakobzon "is an unknown person residing in an unknown location," Defendant Stands4 LTD "is an entity with principal address located in HaMerkaz, Israel," and Defendant GoDaddy.com, LLC "is a limited liability company, duly organized and existing under the laws of Delaware, with its principal office and place of business located in Scottsdale, Arizona." *Id.* ¶¶ 13-15.

The day after filing her Complaint, Plaintiff filed an "Expedited *Ex Parte* Application for Entry of Temporary Restraining Order." ECF No. 5 ("Plaintiff's Motion"). Plaintiff's Motion requested an order "compelling the Defendants Stands4 LTD and GoDaddy.com, LLC, and all others acting in concert with the said Defendants to transfer the Domain Name back to the Plaintiff's account with the Network Solutions registrar." Plaintiff did not send a copy of Plaintiff's Motion to Stands4 LTD or make any other effort to notify Stands4 LTD of the pending action or of Plaintiff's Motion. *See* Ben Efraim Decl. ¶ 17.

On July 27, 2020, the Court granted Plaintiff's Motion. ECF No. 8.

## III.  PLAINTIFF'S APPLICATION FAILS TO MEET THE REQUIREMENTS OF FRCP 65

Plaintiff's application violates numerous provisions of Fed. R. Civ. P. 65 and, therefore, must be dissolved.

### A.  Plaintiff's Application Fails to Satisfy the Requirements of Fed. R. Civ. P. 65(b)(1)(A).

Fed. R. Civ. P. 65(b)(1) states two requirements that must be met if a court is to issue an *ex parte* temporary restraining order ("The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if . . .") (emphasis added). First, the movant must provide specific facts in an affidavit or a verified complaint that clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition. *See* Fed. R. Civ. P. 65(b)(1)(A). Plaintiff's motion fell woefully short of this requirement.

Plaintiff's allegations on the issue of irreparable harm were conclusory at best and failed to "clearly show" or even allege the threat of any immediate and irreparable injury. Plaintiff's declaration stated that Plaintiff "is suffering, and continues to suffer, irreparable harm by way of loss of its website and portal to the world, its monthly revenue and income, its business, its daily users and new potential users, its search engine ranking, as well as the substantial loss of the value of the Domain Name itself." The cookie cutter nature of this statement is readily apparent from Plaintiff's failure to even modify the pronouns from "its" to "she," and from Plaintiff's failure to advise the court that Stands4 has posted an active, sophisticated website at [www.calculator.com](www.calculator.com) that would be viewed by any independent party as an improvement over the site Plaintiff alleges to have previously posted.  Furthermore, Plaintiff failed to provide any specific facts in support of this claim, relying instead on generalities and unverifiable assertions with no supporting evidence—particularly as it relates to the value of the domain name since it was acquired by Stands4. And even if Plaintiff's bare assertions of fact were adequate, she failed to explain how the injury upon which her motion was based is irreparable.

Indeed, the monetary damages that served as the basis for Plaintiff's request are not, as a matter of law, irreparable. An injury can only be considered "irreparable" for the purposes of a

preliminary injunction if it cannot be "undone through monetary remedies." *Cate v. Oldham,* 707 F.2d 1176, 1189 (11th Cir.1983); *see also Hughes Network Systems, Inc. v. InterDigital Communications Corp.,* 17 F.3d 691, 694 (4th Cir. 1994) ("Where the harm suffered by the moving party may be compensated by an award of money damages at judgment, courts generally have refused to find that harm irreparable."). The injury that Plaintiff alleged on a conclusory basis concerning monthly website revenue and income can be addressed through monetary relief. This, standing alone, constitutes grounds to dissolve the TRO. *See CitiGroup Glob. Markets, Inc. v. Wasser*, No. 08-60592-CIV, 2008 WL 11417650, at *2 (S.D. Fla. June 6, 2008) (finding no irreparable injury where monetary damages could serve as adequate remedy); *Garcia-Lawson v. U.S. Auto. Ass'n*, No. 08-80901-CIV, 2008 WL 3850681, at *1 (S.D. Fla. Aug. 14, 2008) (same).

  **B.** **Plaintiff's Application Fails to Satisfy the Requirements of Fed. R. Civ. P. 65(b)(1)(B).**

The second requirement for an *ex parte* temporary restraining order is that Plaintiff's attorney "certify in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1)(B). Strict compliance with this requirement is necessary given the extraordinary nature of an *ex parte* temporary restraining order. *See Austin v. Altman,* 332 F.2d 273, 275 (2d Cir. 1964) ("[A] district court should scrupulously observe the requirements of Rule 65 in the delicate business of granting temporary restraining orders.").

The certification provided by Plaintiff's attorney did not even attempt to describe steps to give Stands4 notice of the pending action or of Plaintiff's Motion. *See* ECF No. 5 at 18. Rather, Plaintiff's attorney made a generic claim that notice should not be required "because unless a temporary restraining order without notice is granted, Defendants can significantly alter the status quo before the Court can determine the parties' respective rights and can take further and

malicious actions to transfer ownership and registration of the domain name to another account with another registrar." *Id.*

Plaintiff's justification for failing to even attempt to provide notice to Stands4 is fundamentally flawed because, as Plaintiff should have known, Stands4 could not have transferred the domain name upon receiving notice of Plaintiff's Motion. First, the domain name registration record for the calculator.com domain name included in Plaintiff's complaint demonstrates the domain name is locked and not subject to transfer. *See* Compl. ¶ 14 (noting the domain status of "clientDeleteProhibited" "clientRenewProhibited" "clientTransferProhibited" and "clientUpdateProhibited"). Moreover, Congress addressed concerns about the transferability of domain names in the Anti-Cybersquatting Consumer Protection Act ("ACPA"), prohibiting the domain name registrar, domain name registry, or other domain name authority from "transfer[ing], suspend[ing], or otherwise modify[ing] the domain name during the pendency of the action, except upon order of the court." 15 U.S.C. § 1125(d)(2)(D)(i)(II). Accordingly, Plaintiff's failure to even attempt to provide Stands4 with notice of Plaintiff's Motion is inexcusable.

Furthermore, Plaintiff would not have had any difficulty providing notice to Stands4 had it made even a minimal effort to do so. Not only is Stands4 identified as the owner of calculator.com in the WHOIS record for the domain name and easily found on Google, but Plaintiff would not have needed to look very hard on the website posted by Stands4 at www.calculator.com to find Stands4's name, address, and/or a contact form through which Plaintiff could have reached Stands4 had she tried. *See* Ben Efraim Decl. ¶¶ 15-17. Under these circumstances where Stands4 was easily identifiable and contactable, Plaintiff cannot provide a legitimate reason why an *ex parte* action was necessary.

The requirements of Fed. R. Civ. P. 65(b)(1)(B) are designed to prevent against the very gamesmanship that Plaintiff and her counsel have employed. Plaintiff's failure to comply with its notice requirements provide an independent ground to dissolve the TRO.

## IV.     PLAINTIFF IS NOT ENTITLED TO ANY FORM OF INJUNCTIVE RELIEF

Not only has Plaintiff failed to meet the specific requirements for an *ex parte* order, but she should not be entitled to any injunctive relief in this case. While Stands4 reserves its right to brief in full its opposition to Plaintiff's attempt to move for a preliminary injunction, Stands4 takes this opportunity to highlight the obvious and substantial deficiencies that preclude Plaintiff from obtaining such relief.

### A.     The Court Lacks Jurisdiction to Issue an Injunction Against Stands4.

As an initial matter, the TRO and any further relief against Stands4 is improper because this Court lacks jurisdiction over Stands4. *See Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n.6 (11th Cir. 1999) ("A court without personal jurisdiction is powerless to take further action."). A plaintiff's complaint must establish a prima facie case of personal jurisdiction over a defendant. *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir. 2010).

A federal court sitting in Florida must conduct a two-step inquiry to determine whether it has personal jurisdiction over a non-resident defendant. The court must determine "(1) whether personal jurisdiction exists over the nonresident defendant...under Florida's long-arm statute, and (2) if so, whether that exercise of jurisdiction would violate the Due Process Clause of the Fourteenth Amendment to the U.S. Constitution." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1350 (11th Cir. 2013). Under Florida's long-arm statute, Fla. Stat. § 48.193, a non-resident defendant can be subject to personal jurisdiction in two ways. First, a Florida court can exercise general personal jurisdiction (jurisdiction over any claims against a defendant, whether or not they involve the defendant's activities in Florida) if the defendant engages in "substantial

8

and not isolated activity" in Florida. *Schulman v. Inst. for Shipboard Educ.*, 624 F. App'x 1002, 1005 (11th Cir. 2015). Second, a Florida court can exercise specific personal jurisdiction (jurisdiction over suits that arise out of or relate to a defendant's contacts with Florida) if the claim asserted against the defendant arises from the defendant's contacts with Florida, and those contacts fall within one of nine statutorily enumerated categories set forth in section 48.193(1)(a). *Id*. If the requirements of the long-arm statute are satisfied, then the court must determine whether the defendant has established sufficient "minimum contacts" with the State of Florida, such that the exercise of jurisdiction over the defendant would not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945).

If the plaintiff makes its prima facie showing of personal jurisdiction, the defendant may challenge the allegations of jurisdiction with evidence. *See Diamond Crystal Brands,* 593 F.3d at 1257 (11th Cir. 2010). Upon the defendant's submission of jurisdictional evidence, "the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Id.* (quoting *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1274 (11th Cir. 2009)); *accord Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

The Court does not have general jurisdiction over Stands4. Only in an "exceptional" case will "a corporation's operations in a forum other than its formal place of incorporation or principal place of business" be "so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 762 n.19 (2014). Accordingly, "[a] foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a

9

corporation's place of incorporation or principal place of business." *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir. 2015).

Plaintiff concedes that Stands4 "is an entity with principal address located in HaMerkaz, Israel." Compl. ¶ 14. Stands4 does not have any contact with or presence in Florida, and no representative of Stands4 has travelled to the state of Florida, actively conducted business with anyone in Florida, or regularly communicated with anyone in Florida. *See* Ben Efraim Decl. ¶¶ 5-6. Accordingly, the Court lacks general jurisdiction over Stands4. *See, e.g.*, *Hard Candy, LLC v. Hard Candy Fitness, LLC*, Case No. 13-23705-CIV, 2015 WL 3377906, at *18 (S.D. Fla. May 13, 2015) (finding no general jurisdiction under the Florida long-arm statute where the defendants were not incorporated in Florida, were not residents of Florida, did not have a principal places of business in Florida, and did not have continuous and systematic contacts with Florida).

Furthermore, the Court does not have specific jurisdiction over Stands4. To establish specific jurisdiction, Plaintiff must demonstrate that the contacts giving rise to jurisdiction: (1) are related to Plaintiff's cause of action or have given rise to it; (2) the contacts involve Stands4 purposefully availing itself of the privilege of conducting activities within Florida, thereby invoking the benefits and protections of its laws; and (3) that Stands4's contacts within Florida are such that it should reasonably anticipate being haled into court here. *See Sculptchair, Inc. v. Century Arts, Ltd.,* 94 F.3d 623, 631 (11th Cir.1996). Plaintiff has not alleged that Stands4 took any action in the State of Florida related to or giving rise to Plaintiff's claims, nor that Stands4 has purposefully availed itself of the privilege of conducting business in Florida as opposed to any other location in the world with access to the Internet.

In sum, this Court has neither general nor specific jurisdiction over Stands4, and therefore it cannot issue injunctive relief compelling Stands4 to take or refrain from any action.

**B.**      **Plaintiff Cannot Satisfy the Substantive Criteria for Injunctive Relief**

Even if this Court had jurisdiction over Stands4, Plaintiff cannot establish the necessary elements to obtain an injunction against Stands4. An injunction, whether permanent or preliminary, is "an extraordinary and drastic remedy which should not be granted unless the movant clearly carries the burden of persuasion." *Canal Authority of the State of Florida v. Callaway,* 489 F.2d 567, 573 (5th Cir.1974). To obtain a preliminary injunction, Plaintiff must establish: (1) a substantial likelihood that she will prevail on the merits; (2) a substantial threat that she will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury to Plaintiff outweighs the harm an injunction may cause to Stands4; and (4) that granting the injunction will not disserve the public interest. *See Church v. City of Huntsville*, 30 F.3d 1332, 1342 (11th Cir. 1994).

First, Plaintiff does not have a likelihood of success on the merits. In her Motion, Plaintiff relies solely on her claim under the ACPA. To prevail on her claim, Plaintiff must prove that: (1) Plaintiff has valid trademark rights in "calculator.com"; and (2) Stands4 registers, traffics in, or uses the calculator.com domain name with a bad faith intent to profit from Plaintiff's mark. *See* 15 U.S.C. § 1125(d)(1). Assuming for the sake of this motion that Plaintiff has valid common law trademark rights in calculator.com, she cannot show that Stands4 registers, traffics in, or uses the domain name with a bad faith intent to profit from Plaintiff's mark. Plaintiff's argument is based on an unsupported assertion that "Stands4 LTD received the transfer of the Domain Name in bad faith, knowing that the Defendant Unknown Registrant was not the true owner of the Domain Name." Dkt. No. 5, ¶ 43. This is patently false. Prior to purchasing the calculator.com domain name from Chloe Alston, Stands4 conducted significant due diligence to

11

confirm that the domain name seller identified as Chloe Alston was indeed the lawful owner of the domain name. *See* Ben Efraim Decl. ¶ 9. The reputable sales platform from which Stands4 purchased the domain name, Dan.com, also advised Stands4 that it undertook significant due diligence to confirm that the domain name seller identified as Chloe Alston was indeed the lawful owner of the domain name including, without limitation, review of Chloe Alston's U.S. issued passport, review of a utility bill provided by Chloe Alston, and review of current and archived WHOIS records for the domain name to confirm that all data corresponded to the data provided by the seller. *Id.* ¶ 11. Dan.com has advised that it is "100% sure that Chloe owned the domain at the time of the transaction and that we were dealing with her. She explicitly authorized this transaction as well." *Id.* ¶ 12.  Not only do the ACPA's "bad faith factors" under 15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX) overwhelmingly demonstrate that Stands4 did not engage in cybersquatting, but the Court should determine that Plaintiff cannot state a claim under the ACPA due the reasonableness of Stands4's belief that the use of the domain name was a fair use or otherwise lawful.  15 U.S.C. § 1125(d)(1)(B)(ii).

Second, there is not a substantial threat that Plaintiff will suffer irreparable injury in the absence of an injunction. As discussed above in relation to the improper *ex parte* nature of Plaintiff's motion, the type of injury claimed by Plaintiff can be addressed through monetary damages, and therefore is not irreparable. Moreover, although Plaintiff makes generalized claims regarding the harm from losing a domain name, Plaintiff alleges that the calculator.com domain name was purportedly stolen from her in 2018 and she does not explain specifically how Stand4's control of the domain name will cause her any injury. After purchasing the calculator.com domain name from Chloe Alston on June 12, 2020, Stands4 developed and posted a new website at www.calculator.com including the web's largest resource for calculations and

12

conversions. *See* Ben Efraim Decl. ¶ 13. If anything, such use is likely to increase the value of the domain name given Stands4's expertise as leading provider of free online reference & educational resources. *See id.* ¶ 3.

Third, the harm of an injunction to Stands4 greatly outweighs any potential harm to Plaintiff. As a bona fide purchaser of the domain name, the harm to Stands4 would be at least as significant as the alleged harm detailed by Plaintiff. Stands4 paid $180,000.00 to purchase the domain name and invested an additional $50,000 developing and marketing Stands4's website at [www.calculator.com](www.calculator.com). *Id.* ¶ 14. Stands4 will lose this investment if the [calculator.com](calculator.com) domain name is transferred aware from Stands4.

Finally, it would not advance any public interest to forcefully remove property from Stands4, which purchased the [calculator.com](calculator.com) domain name in good faith. The purpose of an injunction is to preserve the status quo until the merits of the controversy can be evaluated. *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1284 (11th Cir. 1990). Here, the [calculator.com](calculator.com) domain name has already transferred to Stands4, which has expended a substantial sum to purchase, develop, and promote the domain name. The domain name is in "locked" status, meaning Stands4 cannot transfer the domain name even if it desired to do so, as required by the ACPA during the pendency of litigation. Accordingly, the status quo is best preserved by allowing Stands4 to continue operating the [calculator.com](calculator.com) domain name while Plaintiff's claim against the alleged thief and Stands4, as the innocent purchaser of the domain name, remains pending. This is particularly true given the indicia that Plaintiff herself might be engaged in fraud related to her claim that the domain name was stolen.

In short, Plaintiff has not and cannot establish any of the prerequisites for the drastic relief she is seeking. While Stands4 intends to assert other defenses if needed, it is readily apparent that Plaintiff is not entitled to injunctive relief.

## **CONCLUSION**

Based on the foregoing, Defendant Stands4 LLC respectfully requests that the Court dissolve the ex parte temporary restraining order at the earliest possible time, as it deems appropriate.

Dated: July 28, 2020          By:      /s/ Joan Carlos Wizel
　　　　　　　　　　　　　　　　　Joan Carlos Wizel
　　　　　　　　　　　　　　　　　Florida Bar No. 37903
　　　　　　　　　　　　　　　　　LYDECKER DIAZ
　　　　　　　　　　　　　　　　　1221 Brickell Avenue, 19th Floor
　　　　　　　　　　　　　　　　　Miami, FL 33131
　　　　　　　　　　　　　　　　　(305) 416-3180
　　　　　　　　　　　　　　　　　jcw@lydeckerdiaz.com

　　　　　　　　　　　　　　　　　David E. Weslow (*for pro hac admission*)
　　　　　　　　　　　　　　　　　Ari S. Meltzer (*for pro hac admission*)
　　　　　　　　　　　　　　　　　WILEY REIN LLP
　　　　　　　　　　　　　　　　　1776 K St. NW
　　　　　　　　　　　　　　　　　Washington, DC 20006
　　　　　　　　　　　　　　　　　(202) 719-7000
　　　　　　　　　　　　　　　　　dweslow@wiley.law
　　　　　　　　　　　　　　　　　ameltzer@wiley.law

　　　　　　　　　　　　　　　　　*Counsel for Defendant Stands4 LLC*

## **CERTIFICATE OF SERVICE**

I, Joan Carlos Wizel, hereby certify that on July 28, 2020, I electronically filed the foregoing by using the CM/ECF system. I also certify that a true and correct copy of the foregoing was served this day via transmission of Notices of Electronic Filing generated by CM/ECF on all counsel or parties of record registered therewith.

By:    /s/ Joan Carlos Wizel
        Joan Carlos Wizel
        Florida Bar No. 37903