UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 1:20-cv-23013-BB

CHLOE TSAKIRIS ALSTON,

  Plaintiff,

v.

www.calculator.com; Unknown Registrant
A/K/A Ruth Yakobzon; Stands4 LTD; and
GoDaddy.com, LLC,

  Defendants.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S EXPEDITED MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER

The Plaintiff, CHLOE TSAKIRIS ALSTON ("Chloe" or "Chloe Alston"), by and through undersigned counsel and pursuant to Fed. R. Civ. P. 65, files this Response to Defendant Stands4, LTD's Expedited Motion to Dissolve Temporary Restraining Order (the "Motion to Dissolve"), and states as follows:

### INTRODUCTION

Despite Defendant Stands4, LTD's assertions that they are good faith buyers of the calculator.com domain name (the "Domain Name"), the fact remains that they are knowingly using stolen property and trading on Plaintiff's goodwill. Plaintiff has demonstrated that she has been the legitimate owner of the Domain Name and the calculator.com trademark since 1996, and has submitted substantial evidence of her use of the same for approximately 24 years. Defendant only came to own the Domain Name in the last month.

Defendant claims to have conducted substantial due diligence in connection with its purchase, but provides no evidence whatsoever, and appears to have relied to its detriment on the

representations of the domain name auction website representatives. Additionally, Defendant appears to have relied on the same "evidence" of ownership that was marked as suspicious by a previous third party purchaser of the Domain Name who was able to quickly detect the fraud.

This Court does have personal jurisdiction over the Defendant due to the business targeted directly to website visitors in this State.

## I.   Plaintiff's Application Satisfies the Requirements of FRCP 65

### A.   The Requirements of Fed. R. Civ. P. 65(b)(1)(A)

Plaintiff stands by her assertion that irreparable damage and loss would have occurred had this Court denied the requested *ex parte* relief.  As indicated in Plaintiff's supporting declaration, the domain could have easily been transferred to a different account or a different registrar within minutes had notice been provided to the Defendant. [Docket Entry ("D.E.") 6 at ¶ 28]. Additionally, Plaintiff had reason to believe that Defendant Stands4, LTD was working with the Defendant Unknown Registrant. This is evident by the FBI complaint filed by Plaintiff on July 3, 2020 after other attempts to recover the stolen domain name proved unsuccessful. See D.E. 18-1, *Second Declaration of Nicholas Tsakiris Alston*, at ¶ 10; D.E. 18-6, *Exhibit E*.

Additionally, monetary relief is not sufficient to cure the harm done to Plaintiff, as the theft of her website would result in an incalculable loss of future benefits. [D.E. 6 at ¶ 19-25]. Indeed, Plaintiff and her family rely upon the consistent income earned from operation of the website, and it would be wholly unjust to permit Defendants to benefit from the illegal theft of the Domain Name. *Id.* Importantly, Plaintiffs loss is more than monetary, but also a loss of the ability to use and control their trademark in the "calculator.com" name. When a plaintiff makes a prima facie showing of trademark infringement, irreparable harm is ordinarily presumed. See *McDonald's Corp. v. Robertson*, 147 F. 3d 1301, 1310 (11th Cir. 1998); *Foxworthy v. Custom*

*Tees, Inc.*, 879 F. Supp. 1200, 1219 (N.D.Ga. 1995); *E. Remy Martin & Co. v. Shaw-Ross Int'l Imports*, 756 F.2d 1525, 1530 (11th Cir. 1985); *Power Test Petroleum Distributors v. Calcu Gas*, 754 F.2d 91, 95 (2d Cir. 1985) (Irreparable harm exists in a trademark case when the moving party "shows that it will lose control over the reputation of its trademark pending trial.").

**B.    The Requirements of Fed. R. Civ. P. 65(b)(1)(B)**

As Defendant correctly states, Fed. R. Civ. P. 65(b)(1)(B) permits certification that states the *reasons why notice should not be required*. Plaintiff satisfied this requirement by indicating the quick and easy nature in which a domain name could be transferred once notice is received. The language regarding the alleged lock on the Domain Name mentioned by Defendant [D.E. 10, pg. 7] fails to indicate whether these restrictions were placed by the registrar or whether they were implemented by the owner, in which case the alleged lock could be quickly lifted, and therefore does not provide adequate protection. Florida case law on the subject confirms that frauds committed over the Internet may be subject to ex parte relief, as was sought by Plaintiff. See, e.g., *Dell, Inc. v. BelgiumDomains, LLC*, Case No. 07-22674 WL 6862341, at *2 (S.D. Fla. Nov. 21, 2007) (finding that ex parte relief is acceptable where Defendants' scheme "is in electronic format and subject to quick, easy, untraceable destruction by Defendants.").

Additionally, the mechanism for locking the domain name provided by the Anti-Cybersquatting Consumer Protect Act (the "ACPA") is not the exclusive means of preserving the status quo, nor is it a mandatory requirement for a Plaintiff to pursue this avenue of protection. See 15 U.S.C. 1125(d)(2)(D)(i)(II). The procedure offered under the ACPA is entirely dependent on the voluntary compliance of the domain name registrar, leaving the Plaintiff's valuable Domain Name in a vulnerable state until compliance is obtained. Unless and until an order is entered by the Court, there is no security or assurance that the domain name will be prevented

from further transfers, potentially rendering it beyond the Court's reach and eliminating any potential for meaningful relief. Importantly, locking the domain name to prevent further transfers does not solve the problem of the continuous loss of revenue and search engine rankings being suffered by the Plaintiff on a daily basis.

## II.     Plaintiff is Entitled to Injunctive Relief

### A.   This Court Has Personal Jurisdiction Over the Defendant

A complaint bringing claims against a nonresident defendant must allege "sufficient facts to make out a prima facie case of jurisdiction." *United Techs. Corp. v. Mazer,* 556 F.3d 1260, 1274 (11th Cir. 2009). The Court must accept the allegations in the complaint as true where they are uncontroverted by the defendant's affidavits and resolve all reasonable inferences in the plaintiff's favor. *Consol. Dev. Corp. v. Sherritt, Inc.,* 216 F.3d 1286, 1291 (11th Cir. 2000). "The plaintiff bears the burden of proving `by affidavit the basis upon which jurisdiction may be obtained' only if the defendant challenging jurisdiction files 'affidavits in support of his position.'" *Posner v. Essex Ins. Co.,* 178 F.3d 1209, 1214 (11th Cir. 1999) (quoting *Venetian Salami Co. v. Parthenais,* 554 So. 2d 499, 502 (Fla. 1989)).

### i.      Jurisdiction under Florida's Long-Arm Statute:

Under Florida's long-arm statute, a court can exercise general personal jurisdiction over a defendant that engages in "substantial and not isolated activity" in Florida.  *Schulman v. Inst. For Shipboard Educ.*, 624 F. App'x 1002, 1005 (11th Cir. 2015).  Once general personal jurisdiction is established, a Court must look at specific personal jurisdiction as set out in Florida's long-arm statute, Section 48.193. Thereafter, the Court must determine whether the Court established sufficient 'minimum contacts' within the State of Florida, and whether the exercise of personal

jurisdiction over a defendant is consistent with "fair play and substantial justice." See *International Shoe v. State of Washington*, 326 U.S. 310, 316 (1945).

### a. Defendant Stands4 LTD Engages in Substantial and not Isolated Activity in Florida.

The Defendant Stands4 LTD's business activity in the State of Florida is substantial and not isolated.  In his declaration on behalf of Stands4 LTD (the "Stands4 Declaration"), Yigal Ben Efraim does not deny that Florida is one of the principal sources of visitors and revenues. [D.E. 10-1]. Rather, the Stands4 Declaration vaguely asserts having "no contact with—and no presence—in the State of Florida," and makes assertions that seem to ignore the nature of online business such as "[n]o representative of Stands4 has travelled to the State of Florida." [D.E. 10-1 at ¶¶ 5-6].

However, Ben Efraim then admits that Stands4 is "serving millions of unique visitors" through domain names such as "Grammar.com" and "Lyrics.com". [D.E. 10-1 at ¶ 3].  These websites conduct substantial and not isolated activity in the State of Florida, targeting Floridians with tailored ads like "Florida Seniors on Medicare are Getting a Big PayDay," observed in lyrics.com.  *See* D.E. 18-1 at ¶ 8; D.E. 18-4, *Exhibit C*. Similar geo-targeting was observed in the Calculator.com domain once under Stands4 LTD management, with targeting directed specifically at the large volume of Florida based visitors with geo-targeted attention-grabbing headlines such as:

-"Miami Beach, FL: Did you know?"

- "Congress Increases Amount Seniors can Get from Reverse Mortgages; Floridians: Tap your Age"

- "Naples Resort Communities & Serene Lifestyle Await"

See D.E. 18-1 at ¶ 7; D.E. 18-3, *Exhibit B*.

With the "millions" of unique visitors and revenue generating advertisements targeting Floridians, it is unlikely that Stands4 LTD does not conduct substantial business in the State of Florida, and it is even more unlikely that the Defendant Stands4 LTD has "no contact—and no presence—in the State of Florida," and it is disingenuous to address whether or not Stand4 LTD representatives "travel" to Florida.

### b. The Court has Specific Personal Jurisdiction over Stands4 LTD.

Section 48.193(1)(a), Florida Statutes, provides for personal jurisdiction over defendants who:

> are "carrying on a business or a business venture" or have an office or agency in Florida. In order to establish that a defendant was carrying on a business or business venture in the state, either itself or through an agent, "[t]he activities of the [defendant] sought to be served . . . must be considered collectively and show a general course of business activity in the State for pecuniary benefit."

*See Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 627 (11th Cir. 1996) (citing *Dinsmore v. Martin Blumenthal Associates, Inc.*, 314 So.2d 561, 564 (Fla. 1975)).

Florida has been, and has consistently remained, one of the main sources of online traffic and website revenue for the calculator.com domain over the years, with substantial traffic continuing on through the months leading to the unauthorized transfer. [D.E. 6 at ¶ 8]. It is unlikely that the flow of Florida website traffic stopped when Stands4 LTD obtained possession of the Domain Name. For instance, on July 29, 2020 *alone*, calculator.com had over 3,400 users from Florida. [D.E. 18-1 at ¶ 9; D.E. 18-5, *Exhibit D*]. The action arises out of the Defendant's activity in the State of Florida and are conducted for pecuniary benefit within the State of Florida while depriving the Plaintiff of income, website traffic and website visitors coming from the

State of Florida via the calculator.com Domain Name, and the right to use and control their trademark in the "calculator.com" name.  [D.E. 18-1 at ¶ 9].

### ii.    Minimum Contacts are Satisfied

In conducting its "minimum contacts" analysis, the court applies the following review:

> First, the contacts must be related to the plaintiff's cause of action or have given rise to it. Second, the contacts must involve some purposeful availment of the privilege of conducting activities within the forum, thereby invoking the benefits and protections of its laws. Finally, the defendant's contacts within the forum state must be such that she should reasonably anticipate being haled into court there.

*Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994); *Sculptchair, Inc. v. Century Arts, Ltd.*, 94 F.3d 623, 631 (11th Cir. 1996).

Personal jurisdiction is consistent with due process where the non-resident defendant has established "certain minimum contacts with the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."  *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414, 104 S.Ct. 1868, 1872, 80 L.Eed. 2d 404 (1984) (internal quotation marks omitted) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66, S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

By virtue of actively promoting targeted advertising to persons in the State of Florida, and thereby generating revenue within the State of Florida, including through calculator.com, the Defendant Stand4 LTD purposefully avails itself of the privilege of conducting business activities in this State and in this district, thereby invoking the benefits and protections of its laws.  The defendant Stand4 LTD's activity and contacts in this State are such that Stand4 LTD should reasonably anticipate being haled into court in this forum. For instance, the Defendant Stands4 LTD could be subject to a lawsuit stemming from its various advertisings that are targeted to and displayed to Floridians in large volumes. Further, based on the various facts

outlined herein concerning the activity within this State and forum, the Defendant Stands4 LTD's contacts with this forum are such that the maintenance of the suit in this jurisdiction does not offend the traditional notions of fair play and substantial justice.

It is further worth noting that, on July 29, 2020, calculator.com generated $655 in revenue from the United States.  [D.E. 18-1 at ¶ 9]. Additionally, calculator.com had 225,025 page views from the United States on July 29, 2020.  In contrast, calculator.com had 57 visitors from Israel that same date.  *Id*. Therefore, it can hardly be argued that Stands4 LTD did not make contacts with the United States, including one of its most significant markets, Florida, directly via calculator.com as well as the various additional Stands4 domains.  As further outlined herein, the Defendant Stand4 LTD's contacts with this forum are such that the maintenance of the suit in this jurisdiction does not offend the traditional notions of fair play and substantial justice.

### iii.    Defendant is Subject to Jurisdiction Pursuant to F.R.C.P. 4(k)(2)

Stands4 LTD is further subject to personal jurisdiction of this Court based upon the claims which 'arise under federal law' within the meaning of Rule 4(k)(2) of the Federal Rules of Civil Procedure.  Under Federal Rule of Civil Procedure 4(k)(2), in cases where a defendant is not otherwise subject to general jurisdiction in state courts, a district court can 'aggregate a foreign defendant's nationwide contacts to allow for service of process provided that two conditions are met: (1) plaintiff's claims must 'arise under federal law,' and (2) the exercise of jurisdiction must 'be consistent with the Constitution and laws of the United States." *See Oldfield v. Pueblo De Bahia Lora, SA*, 558 F.3d 1210 (11th Cir. 2009) (citing *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).

Plaintiff's claims arise under federal law. Specifically, Plaintiff has sought relief pursuant to the federal Anti-Cybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d). As set forth in

more detail below, Defendant Stands4 LTD is using the calculator.com domain name with a bad faith intent to profit from Plaintiff's trademark in the calculator.com name.  Stands4 LTD's violation of Plaintiff's trademark rights in the "calculator.com" mark is evident in their outright effort to trade on Plaintiff's goodwill in the mark by claiming within its calculator.com site as follows:

> "Old almost as the Internet itself **Calculator.com**'s mission statement is to be the world's largest and most comprehensive collection of online calculators on the Web."
>
> [D.E. 18-1 at ¶ 3; D.E. 18-2, *Exhibit A*].

The exercise of jurisdiction is "consistent with the Constitution and laws of the United States" because the Defendant has sufficient minimum contacts with the State of Florida, as discussed more fully above.

**B.    Plaintiff Has Satisfied the Substantive Criteria for Injunctive Relief**

Defendant states that Plaintiff cannot satisfy the substantive criteria for injunctive relief by arguing (i) that Plaintiff is not likely to succeed on the merits under the ACPA because she "cannot show that Stands4 registers, traffics in, or uses the calculator.com domain name with a bad faith intent to profit from Plaintiff's mark," and (ii) that Plaintiff cannot show irreparable harm. Plaintiff has provided substantial evidence on both points.

Defendant claims to be a good faith buyer of the Domain Name by stating that "Stands4 conducted significant due diligence to confirm that the domain name seller identified as Chloe Alston was indeed the lawful owner of the domain name." [D.E. 10, pg. 11]. According to the declaration of Yigal Ben Efraim, he reviewed "the email and physical addresses disclosed on the current and historical WHOIS records for the domain name and the content on the

calculator.com website itself and comparison with the information provided by the seller." [D.E. 10-1 at ¶ 9].

Defendant provides no evidence of any due diligence conducted by Defendant. If Defendant had conducted due diligence, the fraud would have been apparent. As set forth in significant detail in Plaintiff's Motion for Temporary Restraining Order, the Defendant Unknown Registrant used an email address impersonating the plaintiff, along with a false identification and fraudulent utility bill to induce Network Solutions to swap the Plaintiff's contact details out with that of the Defendant Unknown Registrants. [D.E. 5 at ¶¶ 22-26]. Additionally, the historical WHOIS records enabled previous potential buyers to easily locate and contact the true owner of the Domain Name when Defendant Unknown Registrant attempted to sell the Domain Name in 2018. [D.E. 5 at ¶ 24; D.E. 5-8, *Exhibit H*]. Notably, the false physical address listed by Defendant Unknown Registrant was an obvious red flag which enabled the previous potential buyers to detect the fraud. See D.E. 5-7; D.E. 5-8].

Defendant further claims that Dan.com informed Defendant that it conducted a "review of Chloe Alston's U.S. issued passport, review of a utility bill provided by Chloe Alston, and review of current and historical WHOIS records for the domain name to confirm that all data corresponded to the data provided by seller." [D.E. 10-1, ¶ 11]. This statement is inadmissible hearsay. Moreover, Defendant presents no evidence that such due diligence occurred. Nevertheless, it appears that Defendant has relied on these representations rather than conducting its own due diligence.

Even assuming, arguendo, that Defendant purchased the Domain Name in good faith, the Defendant is openly and plainly trading on Plaintiff's goodwill, and appears to be claiming ownership of the calculator.com trademark dating back to the early years of the Internet, despite

the fact that Defendant only purchased the Domain Name in the last month. [D.E. 18-1 at ¶ 3; D.E. 18-2]. This fact alone is sufficient to find that Defendant is using the calculator.com domain name with a bad faith intent to profit from Plaintiff's mark. *See* 15 U.S.C. § 1125(d)(1).

Moreover, Defendant has now been put on notice that the Domain Name is stolen property. The continued use and operation of their website located at the stolen Domain Name amounts to the trafficking, by Stands4 LTD, in stolen property, with a bad faith intent to profit from Plaintiff's mark and valuable online traffic. The Plaintiff has a high likelihood of success on the merits due to this clear indication of bad faith. (See, e.g. Section 772.11, Florida Statutes, entitling a claimant to civil remedies for threefold the damages actually sustained in connection with violations of various criminal statutes, including 812.019, which prohibits a party from trafficking in or endeavoring to traffic in stolen property.).

Additionally, Plaintiff has suffered, and will continue to suffer irreparable harm if the injunction is dissolved. Although the Domain Name was stolen from Plaintiff in 2018, she quickly prevented the attempted transfer of the Domain Name by Defendant Unknown Registrant at that time, and has enjoyed the use and benefit of the Domain Name and website operated thereat ever since—that is, until the Domain Name was recently transferred to Defendant Stands4, LTD. [D.E. 5 at ¶¶ 16-17]. Plaintiff has been completely unaware that the contact and ownership details within her Network Solution account were not reverted back to her correct email address until the DNS was updated on June 19, 2020 and the Domain Name began to direct visitors to the website created by Defendant. *Id.* The value allegedly created by the quality of Defendant's website is inapposite, given the fact that the value is created for the benefit of Defendant, not the Plaintiff. Since the theft and transfer to Defendant Stands4, LTD, Plaintiff has lost all income and revenue with respect to the Domain Name, as well as the

invaluable right to use and control the use of their trademark. As previously stated, irreparable harm is ordinarily presumed when a plaintiff makes a prima facie showing of trademark infringement. See, e.g., *McDonald's Corp. v. Robertson*, 147 F. 3d 1301, 1310 (11th Cir. 1998).

Finally, Plaintiff has indicated that Plaintiff herself might be engaging in fraud. [D.E. 10-1 at ¶ 10]. This is absurd and entirely unsupported by any ultimate facts or evidence whatsoever. Fraud must be pled with particularly. Rule 9(b), Federal Rules of Civil Procedure; see also, e.g., *Tellabs, Inc. v. Major Issues & Rights, Ltd.*, 551 U.S. 308 (providing that fraud claims are governed by the heightened pleading standard set forth in Rule 9(b), Federal Rules of Civil Procedure). Like the other claims raised by Defendant, there is no factual or evidentiary support. On the other hand, Plaintiff has provided ample evidence to prove that she was the true owner of the Domain Name and the calculator.com trademark, and was the victim of a fraud by Unknown Registrant, which fraud has been furthered by Defendant Stands4, LTD.

## **CONCLUSION**

Based on the foregoing, the Plaintiff respectfully requests this Honorable Court deny the Defendant's Motion to Dissolve the Temporary Restraining Order, enter a preliminary injunction in favor of the Plaintiff, and provide such other and further relief as this Court deems just and appropriate under the circumstances.

Dated: July 30, 2020

Respectfully submitted,

Recalde Law Firm, P.A.
*Attorneys for Plaintiff*
10800 Biscayne Blvd, Suite 440
Miami, FL 33161
Ph: 305-792-9100
Fax: 1-305-517-1407
By: /s/ Rafael Recalde
Rafael Recalde, Esq.
FBN: 60040
Geremy Klein, Esq.
FBN: 106981
Primary: rafael@recaldelaw.com
Secondary:  geremy@recaldelaw.com

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was served on this

30th day of July, 2020 via e-service to:

Lydecker Diaz, attn.: Joan Carlos Wizel, jcw@lydeckerdiaz.com;

Wiley Rein LLP, attn.: David E. Weslow and Ari S. Meltzer,  dweslow@wiley.law;

ameltzer@wiley.law

  /s/ Rafael Recalde
Rafael Recalde, Esq.
FBN: 60040