UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| CHLOE TSAKIRIS ALSTON,<br><br>　　Plaintiff,<br><br>v.<br><br>CALCULATOR.COM et al.,<br><br>　　Defendants. | Civil Action No. 1:20-cv-23013-BB |

**DEFENDANT STANDS4 LTD'S REPLY IN SUPPORT OF ITS EMERGENCY MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER**

Pursuant to Local Rule 7(c), Defendant Stands4 LTD ("Stands4") submits this reply in support of its motion to dissolve the *ex parte* temporary restraining order issued by this Court on July 27, 2020 (the "TRO"). Despite taking a kitchen sink approach in her Response, Plaintiff Chloe Tsakiris Alston ("Plaintiff") cannot overcome the facts that: (1) this court lacks jurisdiction over Stands4, an Israeli company; (2) *ex parte* relief was not warranted because Plaintiff has not suffered any irreparable harm and her failure to even attempt to notify Stands4 was improper; and (3) Plaintiff cannot satisfy the substantive standard for injunctive relief.

**I.　THE COURT LACKS JURISDICTION TO ISSUE AN INJUNCTION AGAINST STANDS4.**

The Court's inquiry should begin and end with its lack of personal jurisdiction over Stands4. Notwithstanding Plaintiff's attempt to extend the bounds of Florida's long-arm statute, it would be inconsistent with due process for this Court to exercise jurisdiction over Stands4—an Israeli company with no physical presence in Florida. This does not, however, leave Plaintiff without a remedy. Rather, she can follow the *in rem* procedure that Congress specifically created to provide relief in domain name disputes where there is no personal jurisdiction over the domain

1

name owner.

    A.    **This Court Lacks General Jurisdiction Over Stands4.**

Plaintiff all but concedes that as a matter of law, this Court does not have general jurisdiction over Stands4. As Plaintiff acknowledges, general jurisdiction requires a showing that the defendant "engages in 'substantial and not isolated activity' in Florida." Opp. at 4 (citing *Schulman v. Institute for Shipboard Educ.*, 624 F. App'x 1002, 1005 (11th Cir. 2015)). *Schulman* goes on to explain that "[a] foreign corporation cannot be subject to general jurisdiction in a forum unless the corporation's activities in the forum closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *Schulman*, 624 F. App'x at 1005 (quoting *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201, 1205 (11th Cir.2015)).

The limited Internet-based activities cited by Plaintiff hardly constitute activities in Florida that "closely approximate the activities that ordinarily characterize a corporation's place of incorporation or principal place of business." *See Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.*, 645 F. Supp. 2d 1130, 1144 (S.D. Fla. 2009) (finding no general jurisdiction despite operation of websites accessible world-wide); *Zamora Radio, LLC v. Last.fm LTD.*, No. 09-20940-CIV, 2011 WL 2580401, at *11 (S.D. Fla. June 28, 2011) (finding no general jurisdiction despite use of geotargeted ads). Because Stands4 does not have any contact with or presence in Florida other than general Internet-based activities, there is no general jurisdiction over Stands4.

    B.    **This Court Lacks Specific Jurisdiction Over Stands4.**

Stand4's limited, if any, contacts with the state of Florida are also woefully insufficient to give rise to specific jurisdiction. As an initial matter, it is not clear that Florida's long arm statute applies at all. Plaintiff relies on Section 1 of Florida's long-arm statute, which provides for jurisdiction over a person "operating, conducting, engaging in, or carrying on a business or

business venture in this state or having an office of agency in this state." Fla. Stat. § 48.193(1)(a)(1).

"In order to establish that a defendant is 'carrying on business' for the purposes of [Florida's] long-arm statute, the activities of the defendant must be considered collectively and show a general course of business activity in the state for pecuniary benefit." *RMS Titanic, Inc. v. Kingsmen Creatives, Ltd.*, 579 Fed. Appx. 779, 783 (11th Cir. 2014) (quoting *Horizon Aggressive Growth, L.P. v. Rothstein–Kass, P.A.*, 421 F.3d 1162, 1167 (11th Cir.2005)). Factors to consider in making this determination "include: (1) 'the presence and operation of an office in Florida'; (2) 'the possession and maintenance of a license to do business in Florida'; (3) 'the number of Florida clients served'; and (4) 'the percentage of overall revenue gleaned from Florida clients.'" *Id.* at 784 (quoting *Horizon Aggressive Growth*, 421 F.3d at 1167). Plaintiff's complaint does not include allegations sufficient to support any of these factors. Stands4 has no office in Florida and no license to do business in Florida. Although the record is incomplete regarding the final two factors, the document attached to Plaintiff's response demonstrates that only 6.47% of calculator.com's visitors in the United States come from Florida (accounting for less than $50 of advertising revenue). *See* ECF No. 18-5. This falls well short of demonstrating that Stands4 is "carrying on a business" in Florida. *Cf. Ash v. Royal Caribbean Cruises Ltd.*, 991 F. Supp. 2d 1214, 1217 (S.D. Fla. 2013) (finding business that sold cruise tickets through agent in Florida was not carrying on a business in Florida).

Even assuming, arguendo, that the long-arm statute does apply to Stands4, assertion of jurisdiction over Stands4 does not comport with due process. Where specific jurisdiction is asserted, the Court must inquire whether: (1) the defendant purposefully directed its activities towards residents of the forum, (2) the claim arises out of or relates to those activities, and (3)

assertion of personal jurisdiction is reasonable and fair. *See Roblor*, 645 F. Supp. 2d at 1138 (quoting *Avocent Huntsville Corp. v. Aten Intern. Co.*, 552 F.3d 1324, 1332 (Fed. Cir. 2008)).

1. The first prong of this inquiry--whether Stands4 purposefully directed its activities at Florida--is dispositive here. This analysis involves consideration of Stands4's website activity as well as its actual interactions with the state of Florida. *Id.* at 1154; *Zamora Radio*, 2011 WL 2580401, at *9. Plaintiff argues that this test is met because "Florida has been, and has consistently remained, one of the main sources of online traffic and website revenue for the calculator.com domain" and because Stands4's website displays advertising provided by ad networks that target users in Florida. *See* Opp. at 5-6. This court in *Zamora Radio* rejected both of these claims. First, the court found that although the website allowed users to listen to streaming radio, post comments, and subscribe to a newsletter, the mere availability of the website in Florida did not constitute purposeful availment. *Zamora Radio*, 2011 WL 2580401, at *6. The Court also found that targeted advertisements provided by a third-party ad network for third party goods and services did not constitute purposeful availment by the foreign defendant. *Id.* at *7. So, too, here. Stands4's websites are generally available on the Internet, and Plaintiff makes not allegation that they are targeted to Florida. Moreover, any geotargeted advertisements are provided by Google, not Stands4. *See* Second Declaration of Yigal Ben Efraim ¶ 7 (July 30, 2020), attached hereto as Exhibit A ("Second Efraim Decl."). Thus, the Court should find that, like the defendant in *Zamora Radio*, Stands4 has not purposefully directed activities at Florida.

2. Plaintiff's claims cannot arise out of Stands4's forum related activities because there "is no evidence of forum related activities by [Stands4], except through its website." *Zamora Radio*, 2011 WL 2580401, at *10. To establish causation, Plaintiff must establish "the direct causal relationship between the defendant, the forum, and the litigation." *Fraser v.*

*Smith*, 594 F.3d 842, 850 (11th Cir. 2010) (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984)). Here, although Plaintiff repeats her assertions regarding the availability of the calculator.com website in Florida, she does not explain how her claims arise from those contacts because they do not. There is simply no direct causal relationship between Stands4, Florida, and Plaintiff's claims.

       3. Even if Plaintiff could establish minimum contacts, exercise of jurisdiction over Stands4 would offend traditional notions of reasonableness and fairness. When considering whether the exercise of jurisdiction is reasonable, courts consider (1) "the burden on the defendant;" (2) "the forum State's interest in adjudicating the dispute;" (3) "the plaintiff's interest in obtaining convenient and effective relief;" (4) "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and (5) the "shared interest of the several States in furthering fundamental substantive policies." *Avocent Huntsville Corp.*, 552 F.3d at 1332; *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). Here: (1) Stands4 has established that it is an Israeli company with no physical presence in Florida, so the burden of litigating here is substantial; (2) Florida's interest in adjudicating a dispute between a New York resident and an Israeli company is minimal at best, *see Response Reward Systems, L.C. v. Meijer, Inc.*, 189 F.Supp.2d 1332, 1339 (M.D.Fla.2002) (holding that "[t]he mere fact that Defendant's website is accessible to Florida residents is not enough to give Florida a significant interest in adjudicating the matter"); (3) although Plaintiff's interest in obtaining relief may be significant, there is no reason for her to proceed in Florida; (4) as demonstrated below, the more efficient resolution of this controversy is an *in rem* proceeding under the ACPA; and (5) Florida does not share an interest in resolving this dispute.

       Because Plaintiff does not satisfy any, much less all, of the prongs of the specific

jurisdiction inquiry, the Court must dismiss this case and dissolve the TRO.

        **C.**        **Fed. R. Civ. P. 4(k)(2) Does Not Provide Jurisdiction Here.**

Plaintiff's fallback to jurisdiction under Fed. R. Civ. P. 4(k)(2) is equally unpersuasive. Rule 4(k)(2) gives a court "personal jurisdiction over foreign defendants for claims arising under federal law when the defendant has sufficient contacts with the nation as a whole to justify the imposition of United States' law but without sufficient contacts to satisfy the due process concerns of the long-arm statute of any particular state." *World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 720 (5th Cir.1996). Plaintiff did not assert 4(k)(2) as a basis for jurisdiction in her Complaint and did not allege any "jurisdictional contacts" outside of Florida. Even now, Plaintiff has not identified any additional contacts with the United States that would provide a basis for jurisdiction if jurisdiction is not proper in Florida.

        **D.**        **The Court Need Not Adopt Novel Jurisdictional Rules to Provide a Remedy for Plaintiff.**

To the extent Plaintiff's claims are tenable, she is not without a remedy. In the ACPA, Congress adopted a specific procedure for obtaining *in rem* jurisdiction over a domain name "in the judicial district in which the domain name registrar, domain name registry, or other domain name authority that registered or assigned the domain name is located." 15 U.S.C. § 1125(d)(2)(A). It is well-established that the U.S. District Court for the Eastern District of Virginia is the proper forum for such an action, given the presence of the .com registry operator, Verisign, in that district. *See, e.g.*, *411 Mania.com, LLC v. Doe*, 1:17-cv-469 [Doc. 20] (Sept. 12, 2017) ("Venue is proper under the ACPA because VeriSign, Inc., the domain name registry, is located in this district"). Plaintiff's failure to utilize this provision does not justify haling an Israeli company into this country, much less this Court.

## II. PLAINTIFF FAILED TO SATISFY THE REQUIREMENTS OF FED R. CIV. P. 65

Plaintiff has not demonstrated that she satisfied either of the procedural requirements under Fed. R. Civ. P. 65, providing a separate basis to dissolve the TRO.

1. Plaintiff has not shown that her injuries are irreparable. Indeed, Plaintiff concedes that her injuries are monetary in nature, citing her reliance "upon constant income earned from the operation of the website." *See* Opp. at 2. Although Plaintiff argues that her future losses are "incalculable" and that she is entitled to a presumption of irreparability for her trademark-based claims, neither provides a basis for an *ex parte* TRO. To the extent her future lost revenue is incalculable, it is beyond the scope of consideration for a TRO. *See Northeastern Florida Chapter of Ass'n of General Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990) (irreparable harm "must be neither remote nor speculative, but actual and imminent"). Second, Plaintiff's citation to decades old cases about a presumption of irreparable harm is misplaced, as the Eleventh Circuit has called this presumption into question. *See N. Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1227-28 (11th Cir. 2008). Even if a presumption did apply in the Eleventh Circuit, Stands4 would overcome the presumption in this case because its experience in this field would only serve to increase the value of the domain name. *See* ECF No. 10 at 13. Accordingly, there is no irreparable harm.

2. Plaintiff argues that *ex parte* relief was necessary because the mandatory locking of a domain name that is required by the ACPA "is not the exclusive means of preserving the status quo, nor is it a mandatory requirement for a Plaintiff to pursue this avenue of protection." Opp. at 3. However, as the Eleventh Circuit has explained, "[a]n ex parte temporary restraining order is an extreme remedy to be used only with the utmost caution." *Levine v. Comcoa Ltd.*, 70 F.3d 1191, 1194 (11th Cir. 1995). Stringent scrutiny is warranted when "the Defendants are unaware

that judicial proceedings have been commenced and the relief [Plaintiffs] request is drastic." *Emerging Vision, Inc. v. Glachman*, No. 10-80734-CIV, 2010 WL 3293346, at *4 (S.D. Fla. June 29, 2010) (internal citation omitted).

Plaintiff does not argue that she could not have contacted Stands4 to provide notice of the motion. Rather, Plaintiff argues that she was not required to obtain an automatic locking of the domain name by the registrar and/or registry.[1] Plaintiff's argument reveals that the true purpose of Plaintiff's pursuit of an *ex parte* Order was to obtain the ultimate relief that Plaintiff is seeking in this case while depriving Stands4 of the opportunity to be heard—rather than the stated justification of preventing further transfers of the domain name. This is not a valid basis to ignore the procedural requirements of Rule 65.

### III.  PLAINTIFF CANNOT SATISFY THE SUBSTANTIVE CRITERIA FOR INJUNCTIVE RELIEF

Plaintiff has failed to demonstrate that she meets any, much less all, of the four factors for injunctive relief.

1. Plaintiff is not likely to succeed on the merits of her ACPA claim. Plaintiff challenges the sufficiency of the evidence supplied in Stands4's motion as demonstrating that Stands4 did not register or use the calculator.com domain name in bad faith—as required for Plaintiff to succeed on her ACPA claim. Stands4 notes that it learned of the existence of this action, retained counsel, and filed the Motion to Dissolve with 15 hours, whereas Plaintiff filed her *ex parte* emergency motion three months after the purported unauthorized transfer of calculator.com on

---

[1] Plaintiff misstates the nature of the ACPA's locking requirement when suggesting that the mandatory language of the statute is "entirely dependent on the voluntary compliance of the domain name registrar." Opp. at 3. Had Plaintiff contacted the registrar (GoDaddy, a highly regarded and publicly traded U.S. company) or the .com registry (Verisign, also a highly regarded and publicly traded U.S. company), she would have learned that both companies routinely implement domain transfer locks on an expedited basis as required by 15 U.S.C. § 1125(d)(2)(D)(i)(II).

8

April 23, 2020. Nonetheless, Stands4 asserts that the First Declaration of Yigal Ben Efraim, the Second Declaration of Yigal Ben Efraim, and the Declaration of James Iles demonstrate that Plaintiff cannot establish that Stands4 registered or used the calculator.com domain name with a bad faith intent to profit.

Plaintiff does not attempt to argue that the ACPA's bad faith factors under 15 U.S.C. § 1125(d)(1)(B)(i)(I)-(IX) support a claim of cybersquatting against Stands4. Now that Plaintiff's initial argument that "Stands4 LTD received the transfer of the Domain Name in bad faith, knowing that the Defendant Unknown Registrant was not the true owner of the Domain Name," Dkt. No. 5, ¶ 43, has been disproven, Plaintiff's sole argument concerning Stands4's purported bad faith is based on the truthful statement on the website posted by Stands4 at calculator.com that the domain name is "Old almost as the Internet itself Calculator.com's mission…". Opp. at 9. However, Plaintiff admits that the calculator.com domain name was indeed one of the earliest domain name registrations in 1996—making this statement true, and a far cry from demonstrating bad faith.[2]

Moreover, the ACPA's safe harbor in 15 U.S.C. § 1125(d)(1)(B)(ii) makes clear that Plaintiff cannot state a claim against Stands4 due the reasonableness of Stands4's belief that the use of the domain name was a fair use or otherwise lawful. Stands4's belief in the lawfulness of its registration and use of the domain name was supported by its own due diligence, the diligence of its very experienced domain name broker, the diligence and assurances of the Dan.com

---

[2] As noted in Stands4's motion, Stands4 is assuming for the sake of the motion that Plaintiff has valid common law trademark rights in calculator.com. However, mere use of the calculator.com domain name to provide calculator services does not alone establish common law trademark rights. *United States Patent & Trademark Office v. Booking.com B. V.*, 140 S. Ct. 2298, 2307 (2020) ("Whether any given 'generic.com' term is generic, we hold, depends on whether consumers in fact perceive that term as the name of a class or, instead, as a term capable of distinguishing among members of the class.").

domain sales platform representatives, and confirmed by GoDaddy—the largest domain name registrar in the world. *See* Declaration of Yiyal Ben Efraim (ECF No. 10-1) ¶¶ 9-12; Second Efraim Decl.¶¶ 3-5; Declaration of James Iles ¶¶ 6-10 & Ex. A, attached hereto as Exhibit B.

2. As stated above, the harm to Plaintiff is not irreparable.

3. The harm of an injunction to Stands4 greatly outweighs any potential harm to Plaintiff given the substantial investment Stands4 has made as a bona fide purchaser of the domain name.

4. The forceful removal of property from Stands4 altered the status quo and does not advance any public interest. This is particularly true where, although Stands4 has only known about this action for four days, it has already discovered numerous indicia of Plaintiff's potential fraud (apart from the informed conclusions that the seller was indeed Chloe Alston).

> \* Plaintiff claims she first learned of the "theft" of the domain name in 2018 when the winner of the auction contacted her and her father. *See* Compl. ¶ 29. However, two days earlier, while the auction was still in progress, Plaintiff received the first of several attempts by third parties to advise her of the pending auction. Rather than stopping the auction, Plaintiff allowed the auction to be completed and forwarded the message to her father, asking "Should I answer this fool?" *See* ECF No. 05-7.

> \* If Plaintiff's claims regarding the 2018 "theft" are to be believed, rather than redoubling her efforts to secure the domain name based on the alleged importance of revenue from the domain, Plaintiff left the false contact information in place in the registration for the domain name allowing the same alleged domain name thief to purportedly lie in wait for two years before striking again in 2020. *See id.* ¶¶ 28, 33. Plaintiff's own documents demonstrate that she had access to the administrative account for the domain during this time period. *See* ECF No. 05-09.

In short, Plaintiff has not and cannot establish any of the prerequisites for the drastic relief she is seeking. While Stands4 intends to assert other defenses if needed, it is readily apparent that Plaintiff is not entitled to injunctive relief.

## **CONCLUSION**

Defendant Stands4 LLC respectfully requests that the Court dissolve the ex parte temporary restraining order at the earliest possible time, as it deems appropriate.

Dated: July 30, 2020 By:   /s/ Joan Carlos Wizel
Joan Carlos Wizel
LYDECKER DIAZ
1221 Brickell Avenue, 19th Floor
Miami, FL 33131
(305)416-3180
jcw@lydeckerdiaz.com

David E. Weslow (*pro hac vice*)
Ari S. Meltzer (*pro hac vice*)
WILEY REIN LLP
1776 K St. NW
Washington, DC 20006
(202) 719-7000
dweslow@wiley.law
ameltzer@wiley.law

*Counsel for Defendant Stands4 LLC*

## CERTIFICATE OF SERVICE

I, Joan Carlos Wizel, hereby certify that on July 30, 2020, I electronically filed the foregoing by using the CM/ECF system.

By:    /s/ Joan Carlos Wizel
           Joan Carlos Wizel
           LYDECKER DIAZ
           1221 Brickell Avenue, 19th Floor
           Miami, FL 33131
           (305)416-3180
           jcw@lydeckerdiaz.com